**Melvin Leroy TYLER, Appellant,**

**v.**

**Milt HARPER, Cris Egbert and Gary McConnell, Appellees.**

**No. 84–1006.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 29, 1984.

Decided Sept. 28, 1984.

Rehearing and Rehearing En Banc Denied Oct. 23, 1984.

John Ashcroft, Atty. Gen., Kelly Mescher, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Thompson & Mitchell, Donald J. Stohr, St. Louis, Mo., for appellee Gary McConnell.

Melvin Leroy Tyler, pro se.

Kortenhof & Ely, John G. Enright, St. Louis, Mo., for appellee Chris Egbert.

Before BRIGHT, JOHN R. GIBSON and BOWMAN, Circuit Judges.

PER CURIAM.

Melvin Leroy Tyler appeals from the district court's[1] entry of summary judgment against him in this civil rights action brought pursuant to 42 U.S.C. § 1983 (1982). For reversal Tyler argues that the district court (1) incorrectly applied the doctrine of collateral estoppel to bar his claims of witness intimidation and destruction of exculpatory evidence; (2) erred in denying him an opportunity to respond to appellee McConnell's motion for summary judgment; and (3) erred in failing to mail him copies of its orders granting summary judgment against him. We affirm the grant of summary judgment as to all three appellees.

In 1977 Tyler was convicted in Missouri circuit court of first-degree robbery, rape, kidnapping and armed criminal action. The conviction was affirmed on appeal. *State v. Tyler*, 587 S.W.2d 918 (Mo.Ct.App.1979).

In 1980 Tyler filed this section 1983 action against Milt Harper, the former prosecuting attorney for Boone County, Missouri, who prosecuted the case against him, Gary McConnell, an investigator for the Boone County prosecutor's office who assisted Harper in investigating the case, and Cris Egbert, a Columbia, Missouri police officer who also assisted in the investigation. Tyler alleged in his complaint that Harper, McConnell and Egbert had interfered with his right to a fair trial by intimidating and harassing several alibi witnesses. He further alleged that Harper and McConnell erased recorded tapes that were exculpatory evidence.

On December 7, 1983, the district court entered summary judgment for all three defendants, finding that since the issues of witness intimidation and destruction of evidence had been fully litigated and decided in Tyler's state criminal proceeding, Tyler was barred by collateral estoppel from relitigating them. This appeal followed.

## I. THE GRANT OF SUMMARY JUDGMENT ON THE GROUND OF COLLATERAL ESTOPPEL

In reviewing a grant of summary judgment, this court applies the same standard as does the district court: summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

---

**1.** The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

56(c). In applying this standard, we must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Elbe v. Yankton Independent School District No. 1,* 714 F.2d 848, 850 (8th Cir.1983).

Tyler argues that the district court erred in granting summary judgment because there are several issues of material fact. He also argues that the court erred, as a matter of law, by misapplying the doctrine of collateral estoppel to bar his claims.

■ Two recent Supreme Court cases govern our review of Tyler's collateral estoppel argument. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), made clear that collateral estoppel can bar the relitigation of constitutional claims in a section 1983 action when they were fully and fairly litigated and decided in a prior state criminal proceeding. Further, *Migra v. Warren City School District Board of Education,* — U.S. —, 104 S.Ct. 892, 79 L.Ed.2d 56, 61 (1984), emphasized that the Full Faith and Credit Statute, 28 U.S.C. § 1738 (1982), requires federal courts to give the same preclusive effect to a state court judgment as would the state's own courts. Here, since Tyler was convicted in Missouri circuit court, we must apply the Missouri standard for collateral estoppel. In Missouri, the appropriateness of the application of collateral estoppel by a stranger to the prior suit is to be determined on a case-by-case basis. The court is to consider whether: (1) the issue decided in the prior adjudication is identical to the issue in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Oates v. Safeco Insurance Co. of America,* 583 S.W.2d 713, 719 (Mo.

1979) (en banc); *Retirement Board of the Police Retirement System v. Noel,* 652 S.W.2d 874, 877–78 (Mo.Ct.App.1983).

## A. The Witness Intimidation Claim

■ Tyler contends that Harper, Egbert and McConnell interfered with his right to a fair trial by harassing and intimidating several of his alibi witnesses. Harper, Egbert and McConnell argue that this witness intimidation claim was fully litigated and resolved against Tyler in the state criminal proceeding.

Before his trial commenced, Tyler filed a motion to dismiss the prosecution on several grounds, including "for proceeding with dirty hands of the prosecutor, and police allowing intimidation, threating (sic), and harassment of the defendant's alibi witnesses." Judge Kinder, the state circuit judge who presided over Tyler's trial, held a two-day hearing on the motion during which Tyler, with the aid of four attorneys, represented himself on a *pro se* basis.[2] Tyler presented eleven witnesses at the hearing. Of the eleven witnesses, six denied being intimidated by the police, and the remaining five were prisoners at the time of the hearing. Judge Kinder denied the motion to dismiss. Tyler raised the witness intimidation claim again in his motion for a new trial, and in denying the motion Judge Kinder stated, "There was an abundance of evidence in the record on this, of purported threats of that nature to each and every one of your witnesses which the jury didn't choose to believe and I don't tend to believe it either."

On appeal, Tyler argued that Judge Kinder committed reversible error in denying the pre-trial motion to dismiss. The Missouri Court of Appeals rejected this argument, finding that it did not have to decide whether intimidation of defense witnesses is a ground for dismissal of a prosecution, because the trial court found the allegations of intimidation not credible. *Tyler,* 587 S.W.2d at 933.

**2.** Judge Kinder fully explained to Tyler his right to representation by counsel, but Tyler elected to proceed *pro se.* The judge also allowed him great latitude in presenting his case because of his *pro se* status.

Applying the Missouri standard for collateral estoppel, *see Oates,* 583 S.W.2d at 719, we conclude that a Missouri court would bar Tyler from relitigating the witness intimidation claim. The factual issue decided in the criminal proceeding is identical to one in this section 1983 action: whether Harper, Egbert and McConnell actually intimidated or harassed Tyler's alibi witnesses. The state trial judge concluded that they did not. Tyler's conviction was a judgment on the merits affirmed on appeal. Tyler had a full and fair opportunity to litigate the issue in the criminal case: Judge Kinder conducted a two-day hearing during which Tyler presented and extensively questioned eleven witnesses about the alleged intimidation.[3]

The state court gave Tyler an opportunity to prove that the appellees intimidated his alibi witnesses and he failed; we cannot grant him a second opportunity in this section 1983 action. *See Migra,* 104 S.Ct. at 897.

After viewing the evidence in the light most favorable to Tyler and after giving him the benefit of all reasonable inferences, we conclude that the district court did not err in determining that there was no genuine issue of material fact as to the witness intimidation claim. The state court resolved all genuine issues of material fact in the criminal proceeding, and the doctrine of collateral estoppel bars relitigation of the issue.

## B. The Destruction of Exculpatory Evidence Claim

Tyler next argues that Harper and McConnell violated his constitutional rights by destroying exculpatory evidence: two cassette tapes which he alleges contained a statement by the rape victim that she had misidentified Tyler as her assailant. Harper and McConnell argue that this claim was also fully litigated and resolved against Tyler in the criminal proceeding.

On May 10, 1977, shortly before his trial commenced, Tyler moved to dismiss the prosecution on the ground that state law enforcement officers had stolen cassette tapes from him. Judge Kinder held a hearing on this motion on May 26, 1977, and the following day he issued an order requiring F. Metcalfe, a deputy at the St. Louis City jail where Tyler had been detained after his arrest, to deliver two cassette tapes to Tyler. What happened to the tapes after this date is unclear. Tyler alleges that on May 31, 1977, Metcalfe brought the tapes to the Platte County jail where he was confined at the time and that Harper and McConnell intercepted them, erased the rape victim's statement, and then returned them to Tyler. Harper and McConnell deny this allegation.

On June 1, 1977, Tyler appeared before Judge Kinder and informed him that the tapes had been erased. Tyler further stated that the tapes were important because they contained conversations between himself and his lawyer in which he outlined his trial strategy. Judge Kinder responded that he did not know what relevance the tapes had to Tyler's case and that he had done all he could to get them produced. Later, in his motion for a new trial which was denied, Tyler argued that he should have been granted a new trial because "the state prosecutor" (Harper) and "his investigator" (McConnell) erased the tapes which contained important conversations, "and thus, denied his 1st, 5th, 6th, and 14th amendment rights."

On appeal Tyler again argued that the erasure of the tapes violated his constitutional rights and required a reversal of his conviction. In rejecting this claim the Missouri Court of Appeals stated that "[n]owhere does defendant undertake to show what was on the tapes or how they would have aided his cause." *Tyler,* 587 S.W.2d at 933.

---

**3.** Tyler argues that Mo.Rev.Stat. § 537.050 (1969) prohibits Missouri courts from using a criminal proceeding to bar a subsequent civil rights action. Section 537.050 is not applicable here: Tyler is not a "party injured by the commission of * * * [a] felony," but rather the party convicted of inflicting the injury.

When Tyler filed this action he alleged, for the first time, that the tapes contained a statement by the rape victim that she misidentified him. To support this claim Tyler offered an affidavit of a convict who alleged that in 1977 at Tyler's request he telephoned the rape victim and, while impersonating a police officer, obtained an admission that she misidentified Tyler. He further alleged that Tyler was present during the taping of the conversation and that he gave Tyler the tape after it was recorded.

We agree with the district court that Tyler's presentation of this additional evidence concerning the content of the tapes does not make the doctrine of collateral estoppel inapplicable in this case. Collateral estoppel is no defense when the controlling facts have changed in between the first and second suits. *E.g., Commissioner v. Sunnen,* 333 U.S. 591, 599–602, 68 S.Ct. 715, 720–721, 92 L.Ed. 898 (1948). The controlling facts surrounding the destruction of evidence claim, however, have not changed. If the newly offered affidavit is to be believed, Tyler knew before his trial began that the tapes contained the rape victim's statement. He had two opportunities to inform Judge Kinder and one opportunity to inform the Missouri Court of Appeals about the statement. He failed to do this.

Applying the Missouri standard for collateral estoppel, *see Oates,* 583 S.W.2d at 719, we conclude that a Missouri court would bar Tyler from relitigating the destruction of evidence claim. The Missouri Court of Appeals examined the same legal issue that Tyler now presents in this section 1983 action: whether Harper and McConnell violated his constitutional rights by erasing the tapes. Tyler had a full and fair opportunity to litigate this claim in the state trial court and court of appeals. The record shows that he vigorously argued the claim in the criminal proceeding. Although the state trial court may not have resolved the factual issue of whether Harper and McConnell actually erased the tapes, the Missouri Court of Appeals decided that Ty-

ler failed to prove a constitutional violation because he did not show that the tapes contained exculpatory evidence.

There is no disagreement as to the fact that Tyler had a full and fair opportunity in the state court proceeding to prove that the erasure of the tape constituted a violation of his constitutional rights. That court found no violation. We conclude that the district court correctly gave full faith and credit to that decision. *See Migra,* 104 S.Ct. at 898.

## II. THE FAILURE TO ALLOW TYLER TO RESPOND TO McCONNELL'S MOTION FOR SUMMARY JUDGMENT

Tyler argues that he was denied due process because the district court did not allow him to respond to McConnell's summary judgment motion but rather granted the motion immediately after it was filed. The district court's docket sheet confirms that Judge Wright did enter summary judgment for McConnell on December 7, one day after McConnell filed his motion.

McConnell acknowledges that it is generally error for a trial court to enter summary judgment without giving the nonmoving party an opportunity to respond. He argues, however, that this court has previously applied a harmless error rule in such a situation and that the district court's error here was harmless.

Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment must be served "at least 10 days before the time fixed for a hearing" to afford the non-moving party an opportunity to serve counteraffidavits. As a general rule this circuit has required strict adherence to the ten-day notice requirement in Rule 56(c). *See, e.g., Jensen v. Klecker,* 599 F.2d 243, 245 (8th Cir.1979); *Winfrey v. Brewer,* 570 F.2d 761, 764 (8th Cir.1978); *Ailshire v. Darnell,* 508 F.2d 526, 528 (8th Cir.1974). However, in *Kelsey v. State of Minnesota,* 565 F.2d 503, 506 n. 2 (8th Cir.1977), and in *Green v. White,* 693 F.2d 45, 47 (8th Cir. 1982), *cert. denied,* — U.S. —, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983), this court

recognized that the ten-day notice requirement can be waived and is subject to the harmless error rule. Other circuits have also recognized a harmless error exception to Rule 56(c)'s ten-day notice requirement. *E.g., Hoopes v. Equifax, Inc.,* 611 F.2d 134, 135–36 (6th Cir.1979); *Ikerd v. Lapworth,* 435 F.2d 197, 203 (7th Cir.1970); *accord* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.14[1], at 56–357 (2d ed. 1983).

 In this case the district court's failure to give Tyler an opportunity to respond to McConnell's motion for summary judgment was harmless error. In his summary judgment motion filed on December 6, McConnell argued that Tyler was barred by collateral estoppel from relitigating the destruction of evidence claim. An examination of the district court docket sheet and the record reveals that on September 10, 1980, Harper filed a motion for summary judgment in which he presented the same argument: that the destruction of evidence claim was barred by collateral estoppel. He renewed the motion on September 1, 1983, again presenting the same argument. On *three* separate occasions Tyler filed responses to Harper's motion for summary judgment in which he challenged the applicability of collateral estoppel (see docket entries on September 30, 1980, August 19, 1981, and September 16, 1983). He also submitted numerous affidavits and transcripts in an effort to show that his evidence destruction claim was not fully and fairly litigated in the state criminal proceeding. Tyler was not prejudiced by the district court's failure to give him one more opportunity to demonstrate that collateral estoppel should not bar the claim.

## III. THE ALLEGED FAILURE TO SEND COPIES OF THE ORDERS GRANTING SUMMARY JUDGMENT

Tyler argues that he was denied due process because the district court did not send him copies of its orders granting summary judgment against him. To avoid any possible prejudice that may have occurred,

this court *sua sponte* mailed Tyler copies of the orders and granted him an additional twenty days to supplement his brief. We have reviewed his supplemental brief. Any possible prejudice has been remedied.

We affirm the district court's grant of summary judgment in favor of all three appellees.